**Dated: January 17, 2020**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RICKY D. SHARPTON | ) | Case No. 17-15219-SAH |
| a/k/a RICK D. SHARPTON | ) | Chapter 7 |
| a/k/a RICKY DALE SHARPTON, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SUSAN MANCHESTER, Trustee of ALL | ) | |
| PHASE ROOFING AND CONSTRUCTION, | ) | |
| LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 18-01038-SAH |
| | ) | |
| RICKY D. SHARPTON | ) | |
| a/k/a RICK D. SHARPTON | ) | |
| a/k/a RICKY DALE SHARPTON, | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 26 and 27, 2019, the Court conducted a trial on the Complaint [Doc. 1], filed

on April 8, 2018 (the "Complaint") by Susan Manchester ("Plaintiff"), Trustee of All Phase

Roofing and Construction, LLC ("All Phase LLC"), against Ricky Sharpton ("Defendant"),

debtor and president and owner of All Phase LLC.  Attorney Susan Manchester appeared on

behalf of Plaintiff, and Gary Hammond appeared on behalf of Defendant.[1]  As directed by the

Court at the conclusion of trial, but after obtaining an extension of time, the parties filed their

written closing arguments on October 10, 2019.[2]

## JURISDICTION

The Court has jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1334(b), and

venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper

pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C.

§ 157(b)(2)(I)&(J).  Additionally, the parties consented to this Court's entry of final orders

pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012.

## BACKGROUND

Defendant previously operated a roofing and construction business in the form of All

Phase LLC, a single member limited liability company organized in February 2012.  In December

of 2016, All Phase LLC allegedly ceased operations, and Defendant began conducting the same

roofing business as All Phase Roofing Systems ("All Phase Systems"), a sole proprietorship or

D/B/A.  All Phase LLC's bank statements and Defendant's income tax returns clearly indicate

Defendant had a serious gambling habit during this same time period.

---

[1]Defendant was previously represented in his bankruptcy case and this adversary proceeding by Rex D. Brooks who passed away on March 29, 2019.

[2]The trial conducted in this matter also included trial of Plaintiff's Complaint against Defendant filed in Adversary Proceeding No. 17-01070 in All Phase LLC's bankruptcy case (Case No. 17-12414).

All Phase LLC filed its chapter 7 bankruptcy petition on June 18, 2017. Defendant filed his personal chapter 7 bankruptcy petition on December 31, 2017. In her capacity as trustee of the bankruptcy estate of All Phase LLC, Plaintiff filed her Complaint seeking to deny Defendant a discharge pursuant to 11 U.S.C. § 727(a)(2) and (7)[3] and to establish that Defendant owes the All Phase LLC bankruptcy estate a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2), and for turnover pursuant to 11 U.S.C. § 542.[4]

In making the following Findings of Fact and Conclusions of Law, the Court considered:

a.    The Final Pretrial Order [Doc. 22] (the "Pretrial Order"), entered on August 19, 2019;

b.    The trial record, including exhibits introduced by Plaintiff and Defendant and admitted by the Court, and the testimony of Defendant;

c.    Ricky Sharpton's Closing Arguments filed by Defendant on October 10, 2019 [Doc. 34] ("Defendant's Closing Arguments"); and

d.    Plaintiff-Trustee's Closing Argument filed by Plaintiff on October 10, 2019 [Doc. 35] ("Plaintiff's Closing Argument").

---

[3]Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

[4]In Adversary Proceeding No. 17-01070, Plaintiff seeks to avoid and recover fraudulent transfers pursuant to Sections 544, 548(a)(1)(A) and (B), 542, and 550(a) and (b), and the Oklahoma Uniform Fraudulent Transfer Act, 24 O.S. §§112, et. seq. As explained below, based on the outcome of both that adversary proceeding and the Court's conclusion in this adversary proceeding that Defendant is not entitled to a discharge, Plaintiff's Section 523(a)(2) claim is moot.

## FINDINGS OF FACT

### Relevant Pre-Bankruptcy Background

1. Defendant filed the Articles of Organization of a Limited Liability Company for All Phase LLC with the Oklahoma Secretary of State on February 16, 2012. Trustee Ex. 5. All Phase LLC was a single member LLC, and Defendant was the sole owner and president thereof.

2. On July 2, 2013, Defendant transferred real property located at 3400 East Airport Road, Stillwater, Oklahoma (the "Real Property") by quit claim deed from himself to All Phase LLC. Trustee Ex. 20. Defendant claims the Real Property was conveyed to All Phase LLC to facilitate All Phase LLC obtaining a loan, but that it was "really" owned by Defendant.

3. At all relevant times, Defendant lived in a mobile home located on the Real Property (the "Mobile Home").

4. In October 2014, All Phase LLC borrowed money from BancFirst and granted a mortgage lien on the Real Property to BancFirst to secure such indebtedness. Trustee Ex. 23. Defendant did not reveal to BancFirst that he, rather than All Phase LLC, "really" owned the Real Property.

5. Defendant personally guaranteed All Phase LLC's indebtedness to BancFirst. Defendant Ex. 3.

6. In October 2016, Defendant, on behalf of All Phase LLC, entered into a Payment Rights Purchase and Sale Agreement ("Funding Agreement") with Everest Business Funding

4

("Everest").  Defendant personally guaranteed payment under the Funding Agreement.
Trustee Ex. 13.

7.    In conjunction with the Funding Agreement, and around the time he received funds
thereunder during the first week of November 2016, Defendant executed an Affidavit of
Confession of Judgment to be filed in the event of default.  Trustee Ex. 14.

8.    All Phase LLC defaulted under the Funding Agreement with Everest on approximately
December 7, 2016.  Everest filed Defendant's Confession of Judgment in the Supreme
Court for Nassau County, New York, on March 17, 2017.  Trustee Ex. 14.

9.    According to Defendant, All Phase LLC ceased conducting business on December 9,
2016.  Defendant consulted an attorney who advised him to file bankruptcy with respect
to All Phase LLC.  Defendant planned to file bankruptcy at the beginning of 2017.
However, Defendant continued to do business ostensibly as All Phase Systems, a sole
proprietorship/D/B/A.

10.    Per Defendant, after All Phase LLC shut down, it transferred the Real Property and
various other assets – a Trailer, a 2011 Truck, Equipment, and Inventory (all defined
below) – on December 12, 2016, to Defendant for no consideration.  Defendant testified
that he made such transfers on the advice of his late bankruptcy counsel.[5]  Trustee Ex. 21.

---

[5]Defendant's now deceased counsel obviously cannot be questioned about his advice. The
Court cannot ignore that there is no corroborating evidence of any nature supporting Defendant's
claim that his late counsel advised him to transfer assets from an insolvent, non-operating entity
with outstanding creditors to himself for no consideration.  However, the Court notes that the
transfers were subsequently disclosed on All Phase LLC's Statement of Financial Affairs when it
filed bankruptcy, and the assets transferred were listed on Defendant's Schedule A/B in his
bankruptcy case.

5

11.    In March 2017, All Phase LLC entered into a subcontract with Rupe Building Company

(the "Rupe Helmer Contract").  The Rupe Helmer Contract was not entered into by

Defendant d/b/a All Phase Systems, but by All Phase LLC.  Although the Rupe Helmer

Contract itself refers simply to "All Phase," the cover sheet clearly reflects "All Phase

Roofing and Construction LLC" in three places.  Trustee Ex. 30.  Additionally, the Notice

of Assignment attached thereto, which is dated in April 2017, assigns the payments due to

"All Phase Roofing and Construction, LLC" thereunder to BancFirst and is signed by

Defendant as Member/Manager of All Phase LLC, BancFirst, and Rupe Helmer.

Trustee Ex. 30.

12.    Notwithstanding having allegedly ceased business in 2016, All Phase LLC continued to

issue invoices to customers in 2017 prior to its bankruptcy filing, directing customers to

make checks payable to "All Phase Roofing and Construction, LLC."[6]  Trustee Ex. 31.

13.    Similarly, numerous customers issued 1099s to All Phase LLC for 2017 using its employer

identification number, totaling $121,925.25.  Trustee Ex. 33.  Notwithstanding issuance of

these 1099s, All Phase LLC reported no income for 2017.

14.    Notwithstanding All Phase LLC's alleged cessation of business in December 2016, money

continued to move in and out of All Phase LLC's bank accounts up to the bankruptcy

filing in June 2017, **and** for several months thereafter.  Trustee Ex. 39.

---

[6]Defendant claims to have failed to change the paperwork reflecting that he was doing business as All Phase Systems and not as All Phase LLC because it required him to get someone to change the computer system.  The Court notes that Defendant also continued to use the All Phase LLC logo on the 2011 Truck and the Trailer notwithstanding All Phase LLC having allegedly ceased operations.

### All Phase LLC Bankruptcy Case

15.     All Phase LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code on

June 18, 2017 ("Petition Date").  Together with the voluntary petition, All Phase LLC

filed its Schedules and Statement of Financial Affairs, which were signed by Defendant

under penalty of perjury and on the reasonable belief that the information was true and

correct.  Trustee Ex. 1, pp. 5 and 48.

16.     Defendant reviewed the voluntary petition, Schedules, and Statement of Financial Affairs

and believed them to be correct.  At trial, he was not sure of their accuracy and frequently

stated he relied on the advice of his late counsel.

17.     Defendant signed the All Phase LLC bankruptcy filings as President/Manager.

18.     Plaintiff is the duly appointed chapter 7 trustee assigned to the All Phase LLC bankruptcy

case.

19.     All Phase LLC's Schedule A/B provides that it owned the following property on the

Petition Date:

| | |
|---|---:|
| BancFirst Account ending 7529 ("7529 Account")[7] | $    187.78 |
| 1999 SKYL HT WINN Mobile Home[8] | 15,000.00 |

---

[7]All Phase LLC had another BancFirst bank account ending in 9296 for tax purposes (the "9296 Account"); however, such account was never included on All Phase LLC's Schedules.

[8]Notwithstanding the Assignment of Title by Registered Owner being completed with All Phase LLC as the "purchaser" of the Mobile Home on October 9, 1999, and title, per the Oklahoma Certificate of Title on the Mobile Home identifying All Phase LLC as the owner of the Mobile Home, Defendant testified he owned it.  Trustee Ex. 17.  Defendant maintains that he always had possession of, and used, the Mobile Home and the Real Property as his homestead, notwithstanding their transfer to All Phase LLC to use as collateral for a business loan for All Phase LLC from BancFirst.  As Defendant was guarantor of the BancFirst loans in his personal capacity and was sole owner and manager of All Phase LLC, the Court can think of no legitimate

| | |
|---|---|
| Miscellaneous machinery & equipment ("Equipment")[9] | 77,800.00 |
| Miscellaneous inventory of roofing materials ("Inventory") | 53,632.16 |
| Claim against JD McBride Construction LLC | 25,508.63 |
| Account Receivable | 6,208.71 |
| 2014 Ford F250 Super Duty-V8 | 25,375.00 |

Trustee Ex. 1, pp. 8-11.

19.    Per All Phase LLC's Schedule A/B, the total value of its assets as of the Petition Date was

$203,712.28.  Trustee Ex. 1, p. 6.

20.    All Phase LLC's Statement of Financial Affairs provides that it transferred the following

assets to Defendant on December 12, 2016:

| | |
|---|---|
| 3400 East Airport Road, Stillwater, Oklahoma | $76,000.00 |
| 2011 Ford F350 ("2011 Truck") | 7,225.00 |
| 2014 Cargo Craft of Texas Expedition 7022 trailer ("Trailer") | 4,300.00 |

Trustee Ex. 1, p. 41.

21.    Per All Phase LLC's Schedule D, its assets were subject to liens held by the following

secured creditors:

| Creditor | Property subject to lien | Amount | Incurred |
|---|---|---|---|
| BancFirst | Real Property, inventory, accounts and equipment | $ 40,000.00 | 10/04/2013 |

---

reason to transfer the Mobile Home and Real Property to All Phase LLC or back to Defendant.

[9]An equipment list was created August 1, 2017, by Defendant.  Trustee Ex. 2.  A total value of $125,181 is hand-written on Trustee Ex. 2 but Defendant denied he wrote such value. He further testified, however, that the differences in values are the difference between what equipment was worth and its full replacement value.

8

| BancFirst | Inventory, accounts, equipment | 60,000.00 | 07/14/2016 |
| BancFirst | Inventory, accounts, equipment | 40,095.00 | 01/20/2016 |
| Bank of Lake Mills | All assets of All Phase LLC | 111,300.00 | 08/22/2016 |
| Comm'l Finance and Leasing | Business equipment, personal property, inventory, real property | 118,000.00 | 08/15/2016 |
| EBF Partners, LLC | All assets of All Phase LLC | 76, 218.94 | 10/26/2016 |
| Fora Fin'l Business Loans LLC | All assets of All Phase LLC | 113,052.72 | 08/22/2016 |
| Ford Motor Credit | 2014 Ford F250 Super Duty-V8 | 24,759.02 | 06/06/2014 |
| Green Tree Fin. Serv. Corp. | 1999 SKYL HT WINN Mobile Home | Unknown | 1999 |

Thus, the Real Property, 2011 Truck, and Trailer transferred from All Phase LLC to Defendant on December 12, 2016, were also subject to liens of creditors at the time of the transfers.  Per All Phase LLC's Schedule D, it owed secured creditors a total of $583,425.68.  Trustee, Ex. 1, p. 6.

22.    Per All Phase LLC's Schedule H, Defendant was identified as a co-debtor with respect to all of the secured debts listed above except Ford Motor Credit with respect to the 2014 truck (which is not an issue in this case).  Trustee Ex. 1, pp. 33-41.

23.    Per All Phase LLC's Schedule E/F, it owed unsecured creditors a total of $350,103.39 on the Petition Date.  Trustee Ex. 1, p. 6.

24.    Per All Phase LLC's Schedule H, Defendant was identified as a co-debtor with respect to all of All Phase LLC's unsecured debts except four:  2.11-OESC, 3.6-IRS, 3.16-IRS, and 3.27-Scott Thomas PLLC.  Trustee Ex. 1, pp. 33-41.

25.    As of the Petition Date, All Phase LLC was insolvent.  Additionally, based on a review of

Schedule D secured debt alone, All Phase LLC was insolvent at the time it transferred

property to Defendant on December 12, 2016.

26.    All Phase LLC amended its Schedule G on June 2, 2018, adding the Rupe Helmer

Contract thereto.  Trustee Ex. 3.

27.    Trustee has not sought to avoid any liens held by secured creditors in the All Phase LLC

bankruptcy case.  Bky. Doc. Sheet 17-12414.

28.    More than two years have elapsed since entry of the order for relief in All Phase LLC's

bankruptcy case, i.e. the Petition Date of June 18, 2017.

**Defendant Bankruptcy Case**

29.    Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code on December

31, 2017, approximately six months after All Phase LLC filed bankruptcy.  Together with

the voluntary petition, Defendant filed his Schedules and Statement of Financial Affairs

signed under penalty of perjury and declared to be true and correct (the "Schedules").

Trustee Ex. 8, pp. 73 and 81.

30.    Defendant's Schedule A/B provides that, among other assets, he owns the following:

| | |
|---|---:|
| Real Property and Mobile Home | $76,000.00 |
| 2011 Truck | 5,348.51 |
| 2012 Ford F250 truck ("2012 Truck")[10] | 6,865.67 |

---

[10]All Phase LLC made all the vehicle payments and paid all of the insurance premiums on
the 2011 Truck and the 2012 Truck (and took depreciation deductions thereon) until it filed
bankruptcy.  Similar arrangements existed for the Real Property, although it did not pay the real
estate taxes per Defendant.

| | |
|---|---|
| 2015 Honda 4 Wheel ATV | 4,300.00 |
| Miscellaneous office equipment & supplies ("Office Equipment") | 200.00 |
| Equipment | 77,800.00[11] |
| Inventory | 53,632.16 |
| Account Receivable | 6,208.71 |
| BancFirst Checking Account[12] | 53.56 |
| BancFirst Checking Account[13] | 113.83 |
| BancFirst Savings Account | 4.74 |
| Claim against JD McBride Construction LLC | 25,508.63[14] |

Trustee Ex. 8, pp. 16-22.

31.     On his Schedule D, Defendant identified the claims of all the secured creditors listed on

        All Phase LLC's Schedule D (at substantially the same amounts), except for Ford Motor

        Credit Company's claim with respect to a 2014 Ford F250 Truck.  However, by the time

        Defendant filed his voluntary petition, a motion for stay relief with respect to the 2014

        Ford F250 Truck had been granted in the All Phase LLC bankruptcy case and, therefore, it

        is not an issue in this case.  Additionally, Defendant's Schedule D includes Century Trucks

---

[11]Defendant admits it was an error to list the Equipment in his Schedule A/B as it was owned by All Phase LLC at all times.

[12]This is BancFirst account ending 9264 (the "9264 Account").

[13]It is a new account perhaps for All Phase Systems.

[14]This is the same claim as scheduled in the All Phase LLC bankruptcy case; Defendant testified it belongs to All Phase LLC, and he does not know why it was scheduled in his personal bankruptcy case.

11

and Vans as a secured creditor in the amount of $5,348.51 secured by a lien on a 2011
Ford F150.  Trustee Ex. 8, p. 26.  Century Trucks and Vans is also noted as lien holder on
the Certificate of Title issued for the truck on the December 12, 2016, transfer date.
Trustee Ex. 16.

32.    On his Schedule E/F, Defendant listed each and every unsecured creditor and debt listed
on All Phase LLC's Schedule E/F (even those four not included on All Phase LLC's
Schedule H - see ¶ 24 above).  Trustee Ex. 8, pp. 31-51.

33.    In his Statement of Financial Affairs, Defendant listed his income from operating a
business as follows:

| | |
|---|---|
| January 1, 2017 - December 31, 2017 | < $   5,168.77> |
| January 1, 2016 - December 31, 2016 | 284,469.94 |
| January 1, 2015 - December 31, 2015 | 1,704.13 |

Trustee Ex. 8, p. 75-76.

34.    After the conclusion of Defendant's Section 341 meeting of creditors held on April 25,
2018, Defendant amended Schedule C on May 13, 2018, to reflect that the amount
claimed as exempt was 100% of fair market value, up to any applicable statutory limit
rather than a stated value.  Trustee Ex. 10.

35.    On February 27, 2018, Defendant filed the following with the Oklahoma Secretary of
State on behalf of All Phase LLC:  (i) an Application for Reinstatement, which he signed
as manager (and obtained a Certificate of Reinstatement); (ii) an LLC Annual Certificate,
which he signed as president (and paid the filing fee to bring the LLC current); and
(iii) Articles of Dissolution, which he signed as manager (and obtained a Certificate of

Dissolution).  Trustee Ex. 36 and 37.  Per Defendant, he took these steps on the advice of his late counsel.

36.    On April 28, 2018, Trustee objected to Defendant's claims of exemption with respect to the following:

| | |
|---|---|
| Real Property | $76,000.00 |
| 2011 Truck | 5,348.51 |
| 2012 Truck | 7,500.00 |
| Equipment including Trailer | 10,000.00 |
| Office Equipment | 200.00 |
| Inventory | 10,000.00 |

Trustee Ex. 9.  The objection was overruled except to the extent that Defendant's exemption in tools of the trade was limited to an aggregate of $10,000.  See Order Granting in Part and Denying in Part Trustee's Objection to Debtor's Claimed Exemptions with Notice of Opportunity for Hearing and Notice of Hearing [Doc. 26 in Bky. 17-15219] entered on June 5, 2018.

37.    Defendant amended his Schedule G on June 2, 2018, to add the Rupe Helmer Contract which had been inadvertently omitted.  Trustee Ex. 11.

38.    Defendant further amended his Schedule C on June 19, 2018, to comply with the Court's order dated June 5, 2018, to identify no more than $10,000 in tools of the trade on Schedule C.  Trustee Ex. 12.

39.    The chapter 7 trustee in Defendant's bankruptcy case did not seek to avoid any liens on estate property.  Further, after inspecting the personal property of the estate, the chapter 7

trustee abandoned the "estate's interest in all office equipment and supplies, machinery, and equipment used in business including, but not limited to cargo trailers, and miscellaneous inventory of roofing materials." The trustee's stated reason for abandoning the personal property was that the total liens of BancFirst, Bank of the Lakes, and Fora Financial Business Loans, LLC far exceeded the value of the property. See Docs. 25 and 27 in Bky. 17-15219 filed on April 16, 2018 and May 1, 2018, respectively. Defendant's chapter 7 trustee subsequently filed an interim report indicating that none of the estate's assets had any net value in excess of liens, see Doc. 43 filed on July 19, 2018, and then issued a report of no distribution on December 5, 2018.[15]

### All Phase LLC Bank Accounts

40.    In calendar year 2016, Defendant took withdrawals, received cash, and made internet transfers to his personal accounts from All Phase LLC's 7529 Account as follows (in round numbers):

|          |          |
|----------|----------|
| January  | $28,450  |
| February | 54,368   |
| March    | 56,771   |
| April    | 88,223   |
| May      | 91,000   |
| June     | 33,955   |

---

[15]It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases. Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132 (W.D. Okla. 2017).

| | |
|---|---|
| July | 37,000 |
| August | 59,635 |
| September | 35,551 |
| October | 38,885 |
| November | 44,729 |
| December | 530 |

Trustee Ex. 39.  A substantial portion of the withdrawals were made at casinos and other gambling venues.

41.　　In calendar year 2017, Defendant took withdrawals, received cash, and made internet transfers from All Phase LLC's 7529 Account as follows (in round numbers) notwithstanding All Phase LLC having ceased operations in December 2016:

| | |
|---|---|
| January | $ 6,060 |
| February | 5,062 |
| March | 17,898 |
| April | 11,402 |
| May | 30,372 |
| June | 37,357 |

Trustee Ex. 39.

42.　　Defendant essentially treated the funds in All Phase LLC's 7529 Account as his own personal funds and used them however he wanted to use them.

43.　　When All Phase LLC filed bankruptcy, it had $838.24 in the 7529 Account, Trustee Ex. 39, but Defendant never turned such funds over to Plaintiff.  Defendant testimony.

44. When Defendant opened a bank account for All Phase Systems, All Phase LLC funds from 7529 Account and 9296 Account were deposited therein. Trustee Ex. 43.

**Defendant's Free Use of All Phase LLC's Assets**

45. At trial, Defendant's oft-repeated mantra was, to paraphrase, that All Phase LLC and Defendant are one and the same, what one owned, the other owned. He was a single member limited liability company and did not understand All Phase LLC was a separate entity.

46. All Phase LLC transferred the Equipment to Defendant but he could not state when or why it was not so identified in the All Phase LLC Statement of Financial Affairs as having been transferred to him. Defendant testified that he paid nothing to All Phase LLC for the Equipment.

47. Defendant has, or at least had during the relevant periods here, a serious gambling habit, as was apparent from his bank account records. Per Form 1040 he filed with respect to tax year 2016, Defendant had income from All Phase LLC of $284,469.94, gains of $1,390,406.00, and gambling losses of $1,052,931.00. Trustee Ex. 28. Per Defendant, the source of his gambling funds was money made through All Phase LLC.

48. On his 2016 Form 1040, Defendant reported $56,957.00 owed to it on contracts not payable until 2017. Trustee Ex. 28. Defendant then testified he took income received in 2017 on All Phase LLC contracts personally. He, however, did not list such income on his Statement of Financial Affairs. Trustee Ex. 8, p. 74-75. Meanwhile, All Phase LLC only

16

reflected $40,000 as having been paid to insiders, i.e. Defendant, in 2016.[16]  Trustee Ex. 1, p. 47.

49.     Defendant's 2017 Form 1040 reflects no income from a business, but gambling gains of $66,850.00.  Trustee Ex. 29.  When asked for the source of the gambling funds, he first suggested it was from his own "Systems" jobs.  However, when it was pointed out that such funds would have been reportable income, he backtracked and said he did not know.

50.     Defendant testified that he knows that there was income in 2017 from operation of a business, but does not know why the filed 2017 Form 1040 reflected no income.

51.     The filed 2017 Form 1040 also includes an "Affidavit Verification of Dissolution for Tax Reporting" stating that All Phase LLC was dissolved for tax reporting purposes effective December 31, 2016 (the "Affidavit").  Defendant executed the Affidavit on March 18, 2019, on the advice of his accountant.  Defendant admitted that All Phase LLC received income in 2017 but could not explain how as it was dissolved in 2016.[17]

---

[16]The reason for the discrepancy between the Statement of Financial Affairs and his 2016 tax returns as to All Phase LLC income to Defendant was explained by the 2016 tax return not being completed until October 2017, and the income figure on the Statement of Financial Affairs being only an estimate.  This is an incredulous explanation since a quick review of the All Phase bank statements reflects that he took well over $40,000 out of All Phase LLC for his personal benefit in 2016.  In the year June 2016 - July 2017, Defendant took in excess of $342,000 from All Phase LLC for his own use and benefit.  It is inconceivable that $40,000 could be a fair estimate.

[17]Defendant received over $98,000 from All Phase LLC in 2017, reported no income on his 2017 tax return, and negative $5,166.77 in income for 2017 in his Statement of Financial Affairs, question 4.  Trustee Ex. 29, p. 1; Trustee Ex. 8, p. 74.

**Credibility Issues**

52.    To say it was difficult for Plaintiff to get full discovery from Defendant would be an understatement.  Some documents were only provided to Plaintiff shortly prior to trial. Plaintiff previously had to obtain this Court's assistance in compelling Defendant to comply with her discovery requests.  See Doc. 41, 45, 52, and 77 in Adv. 17-01070. Defendant's conduct was simply inexcusable with respect to the delay and trouble imposed on Plaintiff and suggests a lack of candor and a desire to prevent Plaintiff from thoroughly investigating his financial affairs and those of All Phase LLC.[18]

53.    Defendant was the primary witness at trial.[19]  He was understandably uncomfortable on the witness stand, testifying for well over a day.  The Court struggled with many of his explanations and inability to recall events,[20] finding him to be an often-confused, unsophisticated debtor who, at a minimum, did not have a thorough understanding of Plaintiff's claims against him.

54.    The Court also struggled with Defendant's repeated excuse that he relied on the advice of his late counsel primarily because, in the Court's opinion, if the advice was, in fact, given, it was poor advice and often required Defendant to swear under oath and under the

---

[18]Given the inexcusable conduct of Defendant and his counsel, the Court awarded Plaintiff her attorney fees as sanctions against Defendant and his counsel, jointly and severally.  Doc. 77.

[19]James Dailey, Defendant's accountant, was the only other witness at trial.  The Court found his testimony to be relatively uninformative.

[20]This was showcased by Defendant's seeming inability to answer many of Plaintiff's questions with anything but an "I don't know" or "I can't recall," but then being able to go through a bank statement on the second day of trial and specifically identify and explain the purpose of nearly 100 banking transactions from May, June and July 2017.

penalty of perjury to known false facts. Unfortunately, Defendant's counsel passed away in early 2019 and was, therefore, unavailable for confirmation much less examination, making Defendant's scapegoat arguments most convenient. Additionally, as set forth above, Defendant professed his belief was that he and All Phase LLC were "one and the same" numerous times. As unbelievable as that sounds, Defendant never wavered from that position. He never answered any of Plaintiff's questions inconsistently with such position, nor made any statements that would lead the Court to doubt that such position was his genuine, though obviously incorrect, belief. However, as discussed below with respect to Defendant's actual intent to hinder, delay, or defraud creditors, a person's actions and deeds often speak much louder than his words.

## CONCLUSIONS OF LAW

I.      **Burden of Proof and Rules of Construction.**

A creditor has the burden of proving the elements of a Section 727 claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); First Nat'l Bank of Gordon v. Serafini (In re Serafini), 938 F.2d 1156, 1157 (10th Cir. 1991). Once a creditor establishes the acts complained of, the debtor must then come forward with a credible explanation of his actions. Cobra Well Testers, LLC v. Carlson (In re Carlson), 356 B.R. 787, *2 (10th Cir. BAP 2008) (citing In re Martin, 88 B.R. 319, 321 (D. Colo. 1988) (unpub.)). See also Geyer & Assoc. CPA's, P.C. v. Stewart (In re Stewart), 421 B.R. 603, *2 (10th Cir. BAP 2009). The ultimate burden, however, remains with the plaintiff seeking to deny a debtor a discharge. Wieland v. Miller (In re Miller), 448 B.R. 551, 555 (Bankr. N.D. Okla. 2011).

19

The Court must construe the denial of discharge provisions in Section 727 "liberally in favor of the debtor, and strictly against the creditor." Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1292 (10th Cir. 1997) (citation omitted); Kansas State Bank & Trust Co. v. Vickers (In re Vickers), 577 F.2d 683, 687 (10th Cir. 1978); Stewart, 421 B.R. 603, *2. However, a fresh start via bankruptcy discharge is a privilege, not a right, and is reserved for the honest but unfortunate debtor. Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 357 (8th Cir. BAP 2003) (citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991)).

## II.   Law Regarding Denial of Insider's Discharge Pursuant to Section 727(a)(7) *via* Section 727(a)(2).

The Bankruptcy Code denies a debtor a discharge in its entirety when that debtor is guilty of sufficiently bad conduct. The "expectation is that, to be entitled to discharge, the debtor must deal fairly with creditors and with the court. This obligation is imposed indirectly through a series of objections to discharge set out in Code § 727(a)." Wieland v. Gordon (In re Gordon), 526 B.R. 376, 387-88 (10th Cir. BAP 2015) (citing 4 Norton Bankr. L. & Prac. 3d § 86:3 (2014)). Section 727(a)(2) relates to a debtor's transfer, removal, destruction, mutilation, or concealment of property with the intent to hinder, delay, or defraud his creditors. It is a harsh remedy that provides trustees and creditors with "a vehicle under which abusive debtor conduct can be dealt with by denial of discharge[.]" Newton v. Sims (In re Sims), 2011 WL 2619106, at *3 (Bankr. E.D. Tenn. 2011) (quoting Blockman v. Becker (In re Becker), 74 B .R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting Harman v. Brown (In re Brown), 56 B.R. 63, 66 (Bankr. D. N.H. 1985)).

20

Specifically, Section 727(a)(2) provides:

> (a) The court shall grant the debtor a discharge, unless–
>
> . . .
>
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>
>>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>>
>>> (B) property of the estate, after the date of the filing of the petition;

Thus, the elements of a Section 727(a)(2)(A) claim are as follows:

1.  The act complained of was done at a time subsequent to one year before the date of the filing of the petition, or after filing of the petition;

2.  With intent to hinder, delay or defraud a creditor or officer of the estate charged with custody of property under the Bankruptcy Code;

3.  The act was that of the debtor or his duly authorized agent; and

4.  The act consisted of transferring, removing, destroying or concealing any of the debtor's or estate's property or permitting any of these acts to be done.

Stewart, 421 B.R. 603, *2.

Section 727(a)(2) also comes into play by way of Section 727(a)(7) to deny a discharge when:

> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection

21

with another case, under this title or under the Bankruptcy Act,
***concerning an insider***[.]

The application of § 727(a)(7) has been explained as follows: "Section 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a substantially contemporaneous related bankruptcy case. Thus if the debtor engages in objectionable conduct in a case involving [an insider], the debtor may be denied a discharge in the debtor's own case." Groman v. Watman (In re Watman), 2000 WL 35916015, *4 (1st Cir. BAP 2000) (quoting King et al., Collier on Bankruptcy ¶ 727.10 (15th rev. ed. 1998)). See also Stewart, 421 B.R. 603, *2 ("[I]ndividual debtors may be denied a discharge for their conduct in connection with the bankruptcy of an insider if they commit any act specified in paragraphs (2), (3), (4), (5), or (6) of § 727(a)."); Sloan v. Tirey (In re Tirey), 271 B.R. 213, *2 (10th Cir. BAP 2001) (Section 727(a)(7) makes a violation of Section 727(a)(2), (a)(3), (a)(4), (a)(5) or (a)(6) by the debtor committed in connection with an insider's case a basis for denying the debtor's discharge in his own case); Miller, 448 B.R. at 571 (Section 727(a)(7) requires a debtor to commit an act concerning an insider of the debtor in bankruptcy as well); Redmond v. Karr (In re Karr), 442 B.R. 785, 796 (Bankr. D. Kan. 2011) (the debtor must be an insider of a debtor in another bankruptcy case). Therefore, the elements of a Section 727(a)(7) claim are as follows:

1. Debtor, as an insider of another debtor, transferred substantial assets of another debtor to himself or to others for his benefit;

2. Such transfers occurred at debtor's direction;

3. Such transfers occurred within one (1) year of other debtor's bankruptcy filing; and

4. Such transfers were made with intent to hinder, delay or defraud creditors of the insider.

Section 101(31)(A) defines an insider with respect to a debtor who is an individual as a: (i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control.  Section 101(31)(B) provides that insiders of a corporate debtor include:  (i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control, and Section 101(31)(C) contains similar provisions with respect to debtors that are partnerships.

In turn, Section 101(9) provides that the term "corporation"—

> (A) includes—
>
>> (i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;
>>
>> (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
>>
>> (iii) joint-stock company;
>>
>> (iv) unincorporated company or association; or
>>
>> (v) business trust; but
>
> (B) does not include limited partnership.

Unlike a corporation, the Bankruptcy Code does not define "limited liability company" or provide a list of its insiders.  However, limited liability companies are generally considered analogous to corporations and are often treated similarly under the Bankruptcy Code.  See Redmond v. CJD & Assoc., LLC (In re Brooke Corporation), 506 B.R. 560, 567 (Bankr. D, Kan. 2014).  For

23

example, the Seventh Circuit Court of Appeals concluded that a bankruptcy court properly analogized a member of a limited liability company to a director of a corporation.  In re Longview Aluminum, L.L.C., 657 F.3d 507, 509-10 (7th Cir. 2011).  See also O'Connell v. Shallo (In re Die Fliedermaus LLC), 323 B.R. 101, 110-11 (Bankr. S.D.N.Y. 2005).

Further, courts regularly treat the Bankruptcy Code's definition in Section 101(31) as illustrative of insider relationships and not as an exhaustive list.  In applying the term "insider," courts generally rely on the legislative history of Section 101(31), which makes clear that the term covers "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor."  Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 499-500 (S.D.N.Y. 1994) (quoting S. Rep. No. 989, 95th Cong., 1st Sess. 25 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810, 6269 (legislative history to 11 U.S.C. § 101(31)).

**III.    Defendant is Not Entitled to a Discharge Based on His Fraudulent Transfers of Assets Established in Adversary Proceeding No. 17-01070 filed in All Phase LLC's Bankruptcy Case.**

In this instance, All Phase LLC is a single member limited liability company, and Defendant had complete control over every aspect of All Phase LLC.  Therefore, the obvious conclusion is that Defendant is an insider with respect to All Phase LLC.  This is especially true in light of Defendant's repeated statements that "he and All Phase are one and the same," and his disregard of its separate entity status.  Defendant caused All Phase LLC to file its chapter 7 bankruptcy petition on June 18, 2017, and Defendant subsequently filed his personal chapter 7 bankruptcy petition on December 31, 2017.  As a result, if Defendant transferred assets of All Phase LLC with an intent to hinder, delay, or defraud its creditors within one year of the date

24

All Phase LLC filed its bankruptcy petition (satisfying the requirements under Section 727(a)(2)(A)), then Section 727(a)(7) precludes Defendant from receiving a discharge in his own bankruptcy case.

The trial conducted in this matter also included trial of Plaintiff's Complaint against Defendant in Adversary Proceeding No. 17-01070 filed in All Phase LLC's bankruptcy case (Case No. 17-12414). In that adversary proceeding, Plaintiff brought numerous causes of action under Sections 544, 548(a)(1)(A) and (B), 542, and 550(a) and (b), and the Oklahoma Uniform Fraudulent Transfer Act, 24 O.S. §§112, et. seq., for avoidance and recovery of fraudulent transfers. In separate Findings of Fact and Conclusions of Law,[21] the Court held that Defendant's transfers of All Phase LLC's assets to himself were subject to avoidance as actually fraudulent pursuant to Section 548(a)(1)(A).

The relevant statutory phrases of Section 727(a)(2)(A) – "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property" – and that of Section 548(a)(1)(A) – "the debtor . . . made such transfer . . . with actual intent to hinder, delay, or defraud any entity"– are very similar. Therefore, many courts have found that Section 727(a)(2)(A)'s objection to discharge provision and Section 548(a)(1)(A)'s actual fraudulent transfer provision have the same proof of intent requirement. Los Alamos Nat'l Bank v. Wreyford (In re Wreyford), 505 B.R. 47, 57 & n.13 (Bankr. D. N.M. 2014) (citing Cohen v. Bucci, 103 B.R. 927, 930 (N.D. Ill. 1989), aff'd, 905 F.2d 1111 (7th Cir. 1990) (affirming bankruptcy court's application of collateral estoppel to claim objecting to discharge under § 727(a)(2)(A) based on prior adjudication of debtor's intent to hinder, delay, or defraud under

---

[21]See Doc. 91 in Adversary Proceeding No. 17-01070.

25

§ 548(a)(1); "the issue of intent under Section 727(a)(2)(A) is identical to the issue of intent under Section 548(a)(1)."); Guttman v. Fabian (In re Fabian), 458 B.R. 235, 264 (Bankr. D. Md. 2011), aff'd, 475 B.R. 463 (D. Md. 2012), aff'd, 491 F. App'x 420 (4th Cir. 2012) (same); Krudy v. Hoetmer (In re Hoetmer), 2012 WL 4482387, *2 (Bankr. S.D. Ind. Sept. 26, 2012) (finding, based on the identical language in § 727(a)(2)(A) and § 548(a)(1)(A), that "proof of intent under both sections is the same") (citation omitted)). See also In re Soza, 542 F.3d 1060, 1067 (5th Cir. 2008) (Bankruptcy Code unwinds transfers made "with actual intent to hinder, delay or defraud" creditors under Section 548(a)(1), and may deny discharge on similar grounds under Section 727(a)(2)). The Court agrees.

The facts here present a textbook case of an insider causing an entity to make fraudulent transfers for his benefit. Defendant ceased conducting business as All Phase LLC, transferred its assets to himself, continued the same business without interruption as a sole proprietor D/B/A All Phase Systems, and then caused All Phase LLC to file bankruptcy. As a result, the Court found numerous traditional badges of fraud present to support Defendant's actual intent to hinder, delay, or defraud All Phase LLC's creditors. In sum, the transfers were (i) of substantially all of All Phase LLC's assets (in the aggregate) (ii) to an insider (iii) at the time All Phase LLC was insolvent (iv) following default on a debt with respect to which Defendant had signed a confession of judgment.

Other factors also strongly support the Court's conclusion that Defendant intended to hinder, delay, or defraud All Phase LLC's creditors. First, during the discovery process in these cases, Defendant was extremely uncooperative, evidencing a lack of candor and a desire to prevent a thorough investigation of his financial affairs and those of All Phase LLC by Plaintiff.

26

Second, the Court found Defendant's withdrawals of enormous sums of cash from All Phase

LLC's bank accounts primarily at gambling venues without remorse represented a general pattern

of removing and dissipating All Phase LLC's assets that could have been paid to creditors and

were also indicative of a pattern of fraudulent transfers.

The Court's holding in Adversary Proceeding No. 17-01070 that Plaintiff proved

Defendant caused All Phase LLC to transfer assets to himself with actual intent to hinder, delay,

or defraud All Phase LLC's creditors is grounds for denying Defendant a discharge here.

Therefore, Defendant is denied a discharge pursuant to Section 727(a)(7) by way of Section

727(a)(2).

**IV.     Plaintiff is Not Entitled to a Nondischargeable Judgment Under Section 523(a)(2).**

In this adversary proceeding, Plaintiff also seeks to determine whether Defendant owes All

Phase LLC a nondischargeable debt pursuant to Section 523(a)(2) based on actual fraud.

Plaintiff's Section 523(a)(2) claim is now moot for two reasons.  First, although the Court held

that Defendant made transfers of All Phase LLC's assets to himself that were subject to avoidance

under Section 548(a)(1)(A) as actually fraudulent, it concluded that recovery of the assets, which

were subject to liens in excess of their value, would be pointless.  In the absence of an order for

recovery of the assets or their value pursuant to Section 550, there is no debt owed by Defendant

to All Phase LLC's bankruptcy estate to except from Defendant's discharge under Section

523(a)(2).  Second, even if the Court had ordered recovery of assets or entered a money

judgment against Defendant, such debt would not be dischargeable because the Court has already

denied Defendant a discharge in total pursuant to Section 727(a)(7).  Chen v. Huang (In re

Huang), 544 B.R. 256, 266 (Bankr. D. Mass. 2016) (when court has already determined that

defendant is not entitled to a discharge under Section 727(a), the court need not evaluate a pending Section 523(a) claim as it is moot); <u>GMAC, Inc. v. Coley</u> (<u>In re Coley</u>), 433 B.R. 476, 487 (Bankr. E.D. Pa. 2010).

## <u>CONCLUSION</u>

As an insider of All Phase LLC, Defendant fraudulently transferred assets to himself within one year of the date All Phase LLC filed its bankruptcy petition.  Accordingly, judgment will be entered in favor of Plaintiff on her Section 727(a)(7) claim and Defendant will be denied a discharge.  Plaintiff's Section 523(a)(2) claim is denied as moot.[22]

IT IS SO ORDERED.

#   #   #

---

[22]This also moots Plaintiff's claim for turnover under Section 542.

28